```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

FRED KRESAL                      *
                                 *
v.                               *     Civil Action WMN-11-1395
                                 *
RFID GLOBAL SOLUTIONS, INC.      *
                                 *

     *    *    *    *    *    *    *    *    *    *    *
```

**MEMORANDUM**

Currently pending before the Court is Defendant's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). ECF No. 25.  Upon review of the papers filed and the applicable law and for the reasons set forth below, the Court determines that no hearing is necessary, Local Rule 105.6, and that Defendant's Motion should be granted.

**I. FACTUAL BACKGROUND**

In his complaint, Plaintiff Fred Kresal alleges that he began his employment with Defendant RFID Global Solutions, Inc. on or about January 1, 2005.  Between that date and the date on which Plaintiff's employment was terminated, Plaintiff alleges that Defendant, without providing notice to Plaintiff, withheld a portion of his wages for purposes of making contributions to his employer-provided health and dental insurance plans. Furthermore, Plaintiff alleges that Defendant reduced his pay without an express agreement between the parties.  Moreover, Plaintiff claims that Defendant failed to reimburse him for

expenses incurred during his employment.  Lastly, Plaintiff alleges that Defendant failed to compensate him for overtime hours worked.

Plaintiff initiated this action on January 14, 2011, in the Circuit Court for Carroll County, Maryland.  Plaintiff filed an Amended Complaint on or about May 5, 2011.  The Amended Complaint asserts eight causes of action against Defendant: (1) Negligence; (2) Conversion; (3) Equity/Unjust Enrichment; (4) Breach of Implied Contract; (5) Breach of Contract; (6) Violation of the Maryland Wage Payment and Collection Act; (7) Violation of the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-415; and (8) Violation of the Fair Labor Standards Act.  After filing an Answer to the Amended Complaint, and removing the action to this Court, Defendant filed the instant Motion for Judgment on the Pleadings, seeking judgment as to all claims.

## II. LEGAL STANDARD

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  When considering a motion for judgment on the pleadings, a court applies "the same standard" as for motions made pursuant to Rule 12(b)(6).  Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).  Thus, when a party moves for judgment on the

pleadings pursuant to Rule 12(c), the well-pled factual allegations in the complaint are taken as true, whereas those of the answer are taken as true only to the extent that they have not been denied or do not conflict with those in the complaint. Pledger v. N.C. Dep't of Health and Human Servs., 7 F. Supp. 2d 705, 707 (E.D.N.C. 1998).

In Bell Atlantic Corp. v. Twombly, the Supreme Court held that to withstand a motion to dismiss, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." 550 U.S. 554, 570 (2007).  Under the plausibility standard, while a complaint need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Id. at 555.  In other words, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level."  Id.

In Ashcroft v. Iqbal, the Court expanded upon Twombly by explicating the analytical approach to be followed in any Rule 12(b)(6) test to the sufficiency of a complaint.  First, reviewing courts are instructed to identify and segregate out the legal conclusions in the complaint, which, unlike the factual allegations, are "not entitled to the assumption of truth."  Iqbal, 556 U.S. 662, 664 (2009).  Second, a court must determine whether the factual allegations "plausibly suggest an

3

entitlement to relief." Id. at 681.  The Court advised that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Indeed, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663.  Finally, the Court characterized the analysis as "context-specific" and advised reviewing courts to draw upon "judicial experience and common sense" in making their determination.  Id. at 663-664.

## III. DISCUSSION

The Court initially considers whether Plaintiff's first six claims – negligence, conversion, unjust enrichment, breach of implied contract, breach of contract, and violations of the Maryland Wage Payment and Collection Act - are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.  ERISA is a "comprehensive" and "closely integrated regulatory system" that is "designed to promote the interests of employees and their beneficiaries in employee benefit plans." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990) (internal quotations omitted).  Accomplishment of the objectives of ERISA is facilitated by its preemption clause, 29 U.S.C.A. § 1144(a), which protects the administrators of

employee benefit plans from "the threat of conflicting and inconsistent State and local regulation," Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 99 (1983) (internal quotations omitted); see Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981) (noting that by enacting ERISA, Congress "meant to establish pension plan regulation as exclusively a federal concern").

Section 1144(a) provides, in relevant part, that the provisions of ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan." The term "State law" encompasses not only statutes but also common law causes of action, such as Plaintiff's first five claims for negligence, conversion, unjust enrichment, breach of implied contract, and breach of contract. See 29 U.S.C.A. § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law"). Thus, if Plaintiff's claims "relate to" an employee benefit plan, they are preempted by ERISA.

Under § 1144(a), "[a] law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." Shaw, 463 U.S. at 96-97. While the scope of preemption is thus quite broad, it is not unlimited. See Ingersoll-Rand, 498 U.S. at 139. "[W]hat triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an

effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 146-147 (2d Cir. 1989). Generally, when a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption. See Aetna Health Inc. v. Davila, 542 U.S. 200 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."); Monarch Cement Co. v. Lone Star Indus., 982 F.2d 1448, 1452 (10th Cir. 1992).

Here, Plaintiff alleges that "his wages were withheld by [Defendant] for the purpose of contributions towards health and dental insurance without Plaintiff's consent." Am. Compl. ¶ 5. In Jackson v. Wal-Mart, 24 Fed. Appx. 132 (4th Cir. 2001), the plaintiff-employee brought similar claims, alleging that Wal-Mart made excessive deductions from his wages for insurance premiums. The Fourth Circuit found that because the plaintiff's claim necessarily entailed an inquiry into the terms and administration of the employee benefits plan to determine whether plaintiff's wages had undergone unauthorized deductions, the plaintiff's claim "relate[d] to" an employee benefit plan covered under ERISA and was thus preempted. Id. at 133.

6

The Plaintiff attempts to refute the preemption of his first six claims on the theory that "no evidence exists to demonstrate any deductions were made to any employee benefit plan under ERISA." Opp'n at 6. Even in the case that Plaintiff's wages were not in fact directed to any employee benefit plan under ERISA, the determination of such a circumstance necessarily entails "an inquiry into the terms and administration of the employee benefits plan" and thus "relates to" an employee benefit plan covered by ERISA. In that case, preemption would still be proper.

In addition to his claim that improper deductions were made from his pay, Plaintiff also alleges throughout counts 1 through 6 that he was underpaid pursuant to a salary reduction that was made without his agreement. From documents attached to the Amended Complaint, it would appear that Plaintiff's salary indeed was reduced in 2008. Am. Compl., Ex. C. Notwithstanding, an allegation of a reduction in salary absent a mutual agreement is not sufficient to state a claim. Under Maryland law, an employer may reduce an employee's pay without the employee's agreement, provided that proper notice to the employee was given. Md. Code Ann., Lab. & Empl. § 3-504. Thus, to state a legal claim, Plaintiff would have to allege that he was not given proper notice of his salary reduction and this he has not alleged. Consequently, to the extent Counts 1 to 6 are

7

premised on a unilateral reduction in salary, they fail to state a claim.

Plaintiff further alleges in counts 1 and 2 that he has not been reimbursed for expenses incurred. Plaintiff's allegations regarding unreimbursed expenses are also insufficiently pled to state a claim for which relief can be granted. As Defendant notes, Plaintiff fails to identify such expenses as business expenses and fails to allege that Defendant has a policy of reimbursement for such expenses. As Defendant further observes, Plaintiff has failed to delineate the reasons for the expenses and the years in which each expense was incurred. Furthermore, even had Plaintiff pled the facts aforementioned here, at least some of his claims for unreimbursed expenses would be barred by the statute of limitations. Maryland's general statute of limitations states that a civil action must be filed within three years from the date it accrues. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Plaintiff claims he was not reimbursed for expenses incurred throughout 2007, 2008, and 2009. Plainly, Plaintiff's claims arising out of unreimbursed expenses from 2007 are outside of this three-year period and thus are barred. For these reasons, the motion must be granted as to Counts 1 and 2 to the extent they related to claims for unreimbursed expenses.

Defendant's motion must also be granted as to Count 2 of the Amended Complaint on an alternative ground.  Plaintiff alleges in this count that, by unlawfully retaining money owed him for both unreimbursed business expenses and a reduction in salary, Defendant has committed the tort of conversion. Maryland law defines conversion as "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it."  Coots v. Allstate Life Ins. Co., 313 F. Supp. 2d 539, 542 (Md. 2004) (quoting Allied Inv. Corp. v. Jasen, 731 A.2d 957, 963 (Md. 1999)).  As Defendant correctly observes, however, "[t]he general rule is that monies are intangible and, therefore, not subject to a claim for conversion."  Jasen, 731 A.2d at 966.  Notwithstanding that general rule, the law allows an exception "when a plaintiff can allege that the defendant converted specific segregated or identifiable funds."  Id.  This exception extends not only to funds that were actually segregated, but also to funds that "should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction."  Id.

In Plaintiff's Opposition, he demonstrates a failure to distinguish between identifying funds generally underpaid and identifying the specific segregation of those funds from the Defendant's other funds or accounts.  Plaintiff alleges with

9

specificity the amount of underpayment.  In support of his conversion claim, Plaintiff argues that he did not "lump" together all the alleged underpayments but provided "at least eight (8) discrete calculations of unpaid wages."  Opp'n at 8-9.  Plaintiff fails, however, to allege that those funds were not commingled with other funds not owed to him.  Consequently, Plaintiff fails to state a claim for conversion.

Plaintiff alleges in Counts 7 and 8 that throughout the years of 2008, 2009, and 2010, he went uncompensated for the overtime hours he worked and that such withholding by Defendant is a violation of both the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-415, and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.[1]  The FLSA stipulates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] ... at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Defendant contends that Plaintiff has insufficiently pled the FLSA violation in light of the requirements for such a claim set forth in 29 U.S.C § 207.  Defendant also argues that material

---

[1] The Maryland Wage and Hour Law is the state parallel to the Federal Fair Labor Standards Act.  Hence, one analysis will adequately address both claims.  Friolo v. Frankel, 373 Md. 501, 513 (2003).

submitted with the Complaint clearly indicates that Plaintiff was an employee exempted from the reach of the FLSA.

To assert a claim for overtime compensation pursuant to § 207, "a plaintiff must plead (1) that he worked overtime hours without compensation; and (2) that the employer knew or should have known that he worked overtime but failed to compensate him for it." Hawkins v. Proctor Auto Serv. Ctr., No. RWT-09-1908, 2010 WL 1346416 (D. Md. Mar. 30, 2010) (citing Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986)). Courts in the Fourth Circuit have routinely applied a relaxed pleading standard for claims alleging a violation of FLSA. In Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662 (D. Md. 2011), the plaintiffs had alleged that they "were not paid for all hours worked in excess of forty hours in a workweek in violation of the maximum hours provision of FLSA." Id. at 665. The court concluded that such a description provided the defendants sufficient notice of the basis of the allegations to form a response and that the plaintiffs had stated a plausible claim for their entitlement to overtime wages. Id. at 668. Similarly, in Hawkins, the court found that an allegation that the plaintiff had worked more than forty hours a week and was not compensated for such work was a claim "plausible on its face." 2010 WL 1346416 at *1.

The Defendant here argues that the absence of the precise premise that Plaintiff worked "over forty hours in any workweek" makes the allegation insufficient. Plaintiff has alleged that he worked 384 "overtime hours" in 2008, 335 "overtime hours" in 2009, and 180 "overtime hours" in 2010. This court can fairly infer that Plaintiff's calculation of uncompensated overtime hours worked was based on Plaintiff's work in excess of forty hours in each workweek.

Nevertheless, the general provisions in § 207 of the FLSA are limited by § 213, which lays out a comprehensive list of exemptions to the overtime requirement. Notably, § 213(a)(1) states that § 207 of the FLSA shall not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Defendant argues that Plaintiff has failed to sufficiently plead facts demonstrating that, by virtue of his duties, he did not fall under one of the exemptions listed in § 213.

Plaintiff argues that this argument improperly shifts the burden of proving Plaintiff's non-exempt status to Plaintiff. Courts have consistently held that the burden of proving an exemption rests with the employer. See Corning Glass Works v. Brennan, 417 U.S. 188, 198 (1974) (iterating the general rule that "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the

employer has the burden of proof."); McLaughlin v. Murphy, 372 F. Supp. 2d 465 (D. Md. 2004).  Furthermore, a complaint "need not anticipate or attempt to diffuse potential defenses, and failure to do so is not grounds for dismissal." Beaulieu v. Vermont, No. 2:10-CV-00032, 2010 WL 3632460, at *3 (D. Vt. Aug. 5, 2010).

While this prohibition against shifting the burden onto Plaintiff to anticipate defenses would typically preclude granting a motion to dismiss on the basis of the exempt status of a plaintiff's position, in this instance, the material submitted by Plaintiff with his Amended Complaint provides clear and convincing evidence that he was indeed an exempt employee. Regulations adopted by the Department of Labor ("DOL") pursuant to statute set forth a three-part test to determine whether an employee falls under the "administrative" exemption.  Subject to the exemption is any employee: (1) who is compensated on a salary or fee basis of at least $455 per week; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).  Salary alone is not dispositive under the FLSA, but the Fourth Circuit has noted that the "FLSA was

13

meant to protect low paid rank and file employees", not higher-paid managerial employees. Darveau v. Detecon, Inc., 515 F.3d 334, 338 (4th Cir. 2008) (internal quotation marks and citation omitted).

The offer of employment letter that Plaintiff attached to his Amended Complaint indicates that he was hired as the "Director of Customer Support," answering directly to the Sr. Vice President of Operations. Am. Compl., Ex. A.[2] His job duties included developing processes and procedures to build a customer support structure, providing "project management oversight" to customer implementation efforts, "defin[ing]

---

[2] In its motion, Defendant suggests that the offer letter attached to the Amended Complaint is different than the offer letter in Defendant's files. Mot. at 2 n.2. Defendant accepted the authenticity of Plaintiff's proffered letter, however, for purposes of this motion. Id. Plaintiff appears to make the argument that Defendant's reference to a different offer letter prevents this Court from considering the letter that Plaintiff attached to the Amended Complaint. Opp'n at 7 (citing Lefkoe v. Jos. A. Bank Clothiers, Civ. No. WMN-06-1892, 2008 WL 7275126 (D. Md. May 13, 2008)). Lefkoe addressed whether the Court on a motion for judgment on the pleadings could consider documents submitted by the Defendant with its motion to dismiss. Under the facts in that case, this Court specifically held in Lefkoe that "only those documents incorporated by reference into the complaint may be considered in ruling on a motion for judgment on the pleadings." 2008 WL 7275126 at *5. Nothing in Lefkoe can be read to prevent this Court from considering what Plaintiff has alleged to be the authentic offer letter. In addition, this issue is somewhat of a red herring in that Plaintiff appears to anticipate that the difference in the offer letter relates to what benefits were offered with the position, not the job title, starting salary or job description. See Opp'n 6-7 (citing the possibility of a difference between the letters in the context of his argument against ERISA preemption).

product specifications and development requirements," "manag[ing] sub-contractor resources," and conducting "competitive analysis of competing products."  Furthermore, he was given an annual starting salary of $95,000, plus benefits, plus stock options.  Id.  Significantly, the offer letter specified that Plaintiff would be a full-time employee and would be "expected to work a minimum of 40 hours per week."  Id. (emphasis added).

While Plaintiff offers in the Amended Complaint the bald legal conclusion that he was a non-exempt employee, Am. Compl. ¶ 16, 71, the document he submitted with the Amended Complaint completely refutes that very conclusion.  His salary was four times the salary that the regulations suggest as an upper limit for a non-exempt employee.  All of the responsibilities identified as part of his Director position were non-manual, office-based tasks involving the development, management, and oversight of processes and projects central to Defendant's business operations.  Furthermore, each of the tasks listed are intrinsically discretionary.  Plaintiff offers no facts anywhere in the Amended Complaint to undermine the conclusion that he was an exempt employee.

Accordingly, Defendant's motion must be granted as to Plaintiffs overtime claims in Counts 7 and 8.

**IV. CONCLUSION**

For the aforementioned reasons, Defendant's Motion for Judgment on the Pleadings will be granted. A separate order will issue.

                                      /s/
                         William M. Nickerson
                         Senior United States District Judge

DATED: May 14, 2012